IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HAROLD L. WATKINS,**

    **Plaintiff,**

**v.**                                                Civil Action No. 3:24cv856

**M2 BEHAVIORAL HEALTH OF
VIRGINIA, LLC,** *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the court on Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray's (collectively, the "Individual Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss" or "Motion").[1] (ECF No. 3.) Plaintiff Harold L. Watkins responded in opposition to the Motion, (ECF Nos. 8, 9), and the Individual Defendants replied, (ECF No. 12).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant the Motion without prejudice. (ECF No. 3.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

Dr. Watkins brings this one-count action against the Individual Defendants and Defendant M2 Behavioral Health of Virginia, LLC ("M2")[2] for breach of contract. (ECF No. 1-2, at 8.)[3] The Individual Defendants are all "officer[s] and owner[s] of M2" who each "acted on behalf of [themselves] and [the] other defendants in denying [Dr. Watkins] . . . compensation." (ECF No. 1-2 ¶¶ 8–11.)

### A.     Factual Allegations[4]

HarryCo., LLC ("HarryCo") is a mental health services provider in Richmond, Virginia community. (ECF No. 1-2 ¶ 33.) In February 2019, HarryCo and Dr. Watkins, the then-owner of HarryCo, "engaged the services of *Benchmark International*, an international marketing company, to establish a sale profile for [the company]." (ECF No. 1-2 ¶ 19.) In November 2020, Mark Weldler, "an officer and owner of M2," sent a letter of intent "to *Benchmark International*, to purchase HarryCo." (ECF No. 1-2 ¶¶ 8, 20.)

On April 22, 2021, Dr. Watkins and M2 executed a Securities Purchase Agreement (the "Purchase Agreement") and a Promissory Note to allow M2 to purchase HarryCo for

---

[2] On December 9, 2024, M2 filed an Answer to the Complaint and a Counterclaim. (ECF No. 2.) On January 2, 2025, Dr. Watkins filed an Answer to M2's Counterclaim. (ECF No. 10.)

[3] Plaintiff Harold L. Watkins refers to himself as "Mr. Watkins" in his Complaint, (ECF No. 1-2, at 2–9), and "Dr. Watkins" in his Opposition, (ECF No. 9). The Court will refer to Plaintiff as "Dr. Watkins" throughout this Memorandum Opinion.

[4] In considering the Motion to Dismiss, (ECF No. 3), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Dr. Watkins. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To the extent the Complaint's allegations conflict with the content of an exhibit, "the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991)).

2

$3,000,000. (ECF No. 1-2 ¶ 21.) M2 agreed to pay $1,200,000 upon closing. (ECF No. 1-2 ¶ 22; ECF No. 1-2, at 12, §1(b)(i).) M2 agreed to pay the remaining $1,800,000 "in accordance with the terms of" the Promissory Note, which was subject to "an adjustment . . . based upon the working capital of [HarryCo] at [c]losing." (ECF No. 1-2 ¶ 22; ECF No. 1-2, at 12 §1(b)(ii)-(iii); *see also* ECF No. 1-2, at 41.) Both the Purchase Agreement and the Promissory Note contain Virginia choice-of-law clauses. (ECF No. 1-2, at 37 §20; ECF No. 1-2, at 43.)

M2 asked Dr. Watkins "to remain involved in HarryCo as a consultant" and to manage HarryCo's daily operations. (ECF No. 1-2 ¶ 23.) On April 29, 2021, "[t]he terms of this . . . arrangement were memorialized in an 18-month Employment Agreement." (ECF No. 1-2 ¶ 23.) Pursuant to the Employment Agreement, Dr. Watkins would be "paid an annual base salary of $184,000.00."[5] (ECF No. 1-2 ¶ 24.)

On September 29, 2022, Dr. Watkins "gave written notice of his intention to terminate his employment with M2 . . . effective October 29, 2022." (ECF No. 1-2 ¶ 25.) However, Dr. Watkins "remained on staff for an additional four months without a new employment agreement based on promises and representations of M2" and the Individual Defendants. (ECF No. 1-2 ¶ 26.)

Dr. Watkins "has only received eight [] quarterly payments on the outstanding promissory note." (ECF No. 1-2 ¶ 32.) He received no payments in 2024. (ECF No. 1-2 ¶ 32.) To date, Dr. Watkins is owed $1,750,000.00, "plus amortized interest under the terms of the original promissory note." (ECF No. 1-2 ¶ 27.)

---

[5] The Employment Agreement attached to Mr. Watkins' Complaint as Exhibit 3 is neither signed nor dated. (*See* ECF No. 1-2 at 45, 54.)

### B. Procedural Background

On December 2, 2024, Defendant M2 and the Individual Defendants properly removed this case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.[6] (ECF No. 1, at 5.) The Complaint asserts one cause of action, breach of contract, against all Defendants. (ECF No. 1-2 ¶¶ 36–42.)[7] Following removal, on December 9, 2024, the Individual Defendants filed a timely Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3.) Dr. Watkins responded, (ECF Nos. 8, 9), and the Individual Defendants replied, (ECF No. 12).

For the reasons articulated below, the Court will grant the Motion without prejudice. (ECF No. 3.)

## II. Standard of Review

### A. Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

---

[6] 28 U.S.C. § 1332 provides, in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States[.]

28 U.S.C. § 1332(a)(1).

[7] As noted above, on December 9, 2024, M2 filed an Answer to the Complaint and a Counterclaim. (ECF No. 2.) On January 2, 2025, Dr. Watkins filed an Answer to M2's Counterclaim. (ECF No. 10.)

4

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III. Analysis

The Individual Defendants contend that Dr. Watkins fails to state a claim for breach of contract. (ECF No. 4, at 5.) Accepting Dr. Watkins' factual allegations as true and drawing all

reasonable inferences in his favor, as the Court must do at the motion to dismiss stage, the Court agrees. The Court will grant the Motion to Dismiss without prejudice. (ECF No. 3.)

### A. Dr. Watkins Fails to State a Claim for Breach of Contract

Dr. Watkins fails to state a claim against the Individual Defendants for breach of contract. Under Virginia law, which governs both the Purchase Agreement and the Promissory Note, individual members of a corporation cannot be held liable for the breach of a contract to which they were not a party. *See Bogese, Inc. v. State Highway and Transp. Com'r of Va.*, 462 S.E.2d 345, 348 (Va. 1995).

A limited exception to this general rule, known as piercing the corporate veil, allows a plaintiff to hold an individual liable for a corporation's misconduct. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011). This requires a plaintiff to show that "an individual is the alter ego of a corporation", and that the individual used this alter ego "'to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.'" *Id.* (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002)). Although Dr. Watkins requests this remedy in his Opposition, he does not request this remedy or present a theory of alter ego liability in his Complaint. As a result, the Court will dismiss this count without prejudice.

#### 1. Legal Standard: Breach of Contract

Generally, in Virginia, a defendant cannot be held liable for breaching a contract to which they are not a party. *See Perez v. Cenlar, Cent. Loan Admin. & Reporting*, No. CL19-10130, 2022 WL 18360345, at *4 (Va. Cir. Ct. Apr. 19, 2022) (plaintiff failed to state a claim of breach of contract where the defendant "was not a party to the contract"); *see also Andrews v. RB-HRIP Richmond Multifamily LLC*, No. 3:23cv264 (MHL), 2025 WL 1128767, at *6 (E.D. Va. Apr. 16,

2025) (dismissing breach of contract claim where plaintiff was not a party to the contract); *Scheurer-Henry v. Envoy of Richmond, LLC*, No. 3:21cv376 (JAG), 2021 WL 5755335, at *7 (E.D. Va. Dec. 3, 2021) (same).

### 2. Legal Standard: Piercing the Corporate Veil

Under "'extraordinary'" circumstances, a court may "pierc[e] the corporate veil" to hold an individual liable for a corporation's actions. *See Bogese, Inc.*, 462 S.E.2d at 348 (quoting *Cheatle v. Rudd's Swimming Pool Supply*, 360 S.E.2d 828, 831 (Va. 1987)).

In Virginia, "a court may pierce the corporate veil to find that an individual is the alter ego of a corporation where it finds '(i) a unity of interest and ownership between [the individual and the corporation], and (ii) that [the individual] used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.'" *Newport News Holdings Corp.*, 650 F.3d at 434 (brackets in original) (quoting *C.F. Trust*, 306 F.3d at 132). To justify piercing the corporate veil, "the unity of interest and ownership" between the individual and the corporation must be "such that the separate personalities of the corporation and the individual no longer exist." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 580 S.E.2d 806, 810 (Va. 2003) (quoting *Greenberg v. Commonwealth*, 499 S.E.2d 266, 272 (Va. 1998)). "A decision whether to disregard the corporate fiction [that the individual *is* the alter ego of the corporation] depends largely upon resolution of questions of fact with the burden of proof resting upon the party seeking to pierce the veil." *Cheatle*, 360 S.E.2d at 831. At bottom, "[t]he decision to ignore the separate existence of a corporate entity and impose personal liability upon [an individual] for debts of the corporation is an extraordinary act to be taken only when necessary to promote justice." *C.F. Trust, Inc.*, 580 S.E.2d at 809 (citations omitted).

7

"Corporate veil piercing is not a separate cause of action, but instead a means to impose liability on an underlying cause of action." *Va. Elec. & Power Co. v. Peters*, No. 3:17-cv-259 (JAG), 2018 WL 1995523, at *3 (E.D. Va. Apr. 27, 2018). As such, because "[a] Rule 12(b)(6) motion may only be used to dismiss claims, not remedies", it is procedurally improper to contest the remedy of corporate veil piercing at the motion to dismiss stage. *Polito's Christmas Wholesale LLC v. Blue Mountain Christmas Tree Farm*, No. 1:23cv00027, 2024 WL 4202729, at *2 (W.D. Va. Sept. 16, 2024).[8]

### 3. Dr. Watkins Fails to State a Claim for Breach of Contract, and Does Not Present a Theory of Alter Ego Liability in the Complaint

In the sole count of his Complaint, Dr. Watkins alleges a breach of the Purchase Agreement and the Promissory Note. (ECF No. 1-2 ¶¶ 37–42.) Both the Purchase Agreement and the Promissory Note at issue contain Virginia choice-of-law clauses. (ECF No. 1-2, at 37 §20; ECF No. 1-2, at 43.) As a result, Virginia law applies to Dr. Watkins' breach of contract claim. None of the Individual Defendants are parties to the Purchase Agreement or the Promissory Note at issue. As such, barring the Court piercing the corporate veil, they cannot be held liable for M2's alleged breach of the Purchase Agreement or Promissory Note. *See Perez*, 2022 WL 18360345, at *4; *Andrews*, 2025 WL 1128767, at *6; *Scheurer-Henry*, 2021 WL 5755335, at *7.

In his Opposition, Dr. Watkins does not dispute the fact that none of the Individual Defendants are parties to the Purchase Agreement or the Promissory Note. (ECF No. 9, at 4.)

---

[8] In *Polito's Christmas Wholesale*, unlike here, the Complaint contained the allegation that various individual defendants were "the co-venturers, principals, proprietors, partners, owners, operators and **alter egos** of [co-defendant Blue Mountain Christmas Tree Farm]." *Polito's Christmas Wholesale LLC v. Blue Mountain Christmas Tree Farm*, No. 1:23cv00027, ECF No. 1 ¶ 5 (W.D. Va. August 25, 2023) (emphasis added).

8

Nonetheless, he asks the Court to hold the Individual Defendants liable in this action by piercing the corporate veil. (*See* ECF No. 9, at 4–5.) However, it is axiomatic that plaintiffs cannot amend their complaints through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Reasonably read, the Complaint itself fails to make any allegation that the Individual Defendants are alter egos of M2 or otherwise request the remedy of corporate veil piercing.

Without this theory of liability present in the Complaint, the Court must dismiss the breach of contract action against the Individual Defendants for failure to state a claim where no Individual Defendant was a party to the Purchase Agreement or Promissory Note. *See Perez*, 2022 WL 18360345, at *4; *Andrews*, 2025 WL 1128767, at *6; *Scheurer-Henry*, 2021 WL 5755335, at *7.

## IV. Dr. Watkins Will be Permitted to File A Motion Seeking Leave to Amend

Dr. Watkins requests, in the alternative, that the Court grant him leave to file an Amended Complaint. (ECF No. 9, at 5.) Dr. Watkins states in his Opposition, without any citation to the Complaint or to a proposed Amended Complaint,[9] that "there are facts to support allegations of fraud on behalf of the [I]ndividual [D]efendants." (ECF No. 9, at 5.) He offers, again without citation, that "Defendants Mark Weldler and Moshe Lowy were intricately involved in negotiating the transaction, altering terms to the transaction . . . post contract, and making promises to Dr. Watkins to maintain and induce his employment and management of

---

[9] Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "'[W]hen a plaintiff seeks leave to amend his [or her] complaint under Rule 15(a), or any other pleading, a copy of the proposed amended pleading, and not simply the proposed amendment, must be attached to the motion. Otherwise the motion will be denied, without prejudice.'" *Hicks v. Potter*, No. 2:10cv246 (FBS), 2011 WL 13196459, at *1 (E.D. Va. Jan. 25, 2011) (quoting *Williams v. Wilkerson*, 90 F.R.D. 168, 170 (E.D. Va. 1981).)

9

[HarryCo] for eighteen [] months post[-]sale and beyond." (ECF No. 9, at 5.) Dr. Watkins concludes in his Opposition that Mr. Weldler and Mr. Lowy "were each intricately involved in every stage of transaction and should not be allowed to hide behind the corporate veil." (ECF No. 9, at 5.) These factual additions, if considered, would improperly amend the complaint, as would the additional legal theory discussed above. As such, they are not part of the record.

In their reply, the Individual Defendants oppose this request on the bases of "futility," "bad faith," and "undue prejudice." (ECF No. 12, at 4.) The Individual Defendants argue, without citation to any case law, that "[p]ermitting [Dr. Watkins] to maintain a veil-piercing claim[10] against the Individual Defendants without any underlying liability determination would 'encourage' other plaintiffs asserting breach of contract claims against a corporate entity to simultaneously sue individual corporate officers on a veil-piercing theory." (ECF No. 12, at 4.)

Neither party provides case law for or against the proposition that under Virginia law, a plaintiff may sue a corporation for breach of contract and, in that same suit, also seek recovery for the breach against individual defendants under a corporate-veil-piercing theory of liability. In *Polito's Christmas Wholesale*, a Western District of Virginia District Court suggested that this approach could be procedurally permissible, and noted that in any event, corporate veil piercing is a remedy rather than a separate cause of action, and therefore cannot be dismissed at the motion to dismiss stage. *See* 2024 WL 4202729, at *2. In so doing, the court addressed *Bennett v. Garner*, which includes language stating that "before bringing an action to pierce the corporate veil, the plaintiff must 'first obtain[] a judgment against the corporation.'" 913 F.3d 436, 443

---

[10] More precisely, piercing the corporate veil is a remedy rather than a separate cause of action. *See Va. Elec. & Power Co.*, 2018 WL 1995523, at *3; *Polito's Christmas Wholesale*, 2024 WL 4202729, at *2.

10

(4th Cir. 2019) (brackets in original) (quoting *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003)).[11] In *Bennett*, the United States Court of Appeals for the Fourth Circuit held that under the doctrine of *res judicata*, an arbitration award did not preclude an alter ego claim that sought to pierce the corporate veil and recover a judgment amount directly from an individual defendant. *See* 913 F.3d at 443; *see also Va. Elec. & Power Co.*, 2018 WL 1995523, at *3 (explaining that "*[r]es judicata* does not apply to the corporate veil piercing claim", as "[c]orporate veil piercing is not a separate cause of action, but instead a means to impose liability on an underlying cause of action.")

Here, the Complaint is silent regarding veil piercing or whether any Individual Defendant is an alleged "alter ego" of M2, and the Court has not been presented with a proposed Amended Complaint. As noted above, neither party provides case law for or against the proposition that under Virginia law, a plaintiff may sue a corporation for breach of contract and, in that same suit, also seek recovery for the breach against individual defendants under a corporate veil piercing theory of liability. On this sparse record where this issue is neither squarely presented nor briefed, the Court will not rule on this issue. *See O'Connor v. United States*, No. 3:14-mc-004 (JRS), 2014 WL 12576878, at *1 (E.D. Va. June 17, 2014) ("[I]t is axiomatic that 'federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

---

[11] In *Dana*, the Virginia Supreme Court stated that to impose liability against a corporation's "stockholders", a plaintiff must "first obtain[] a judgment against the corporation", and thus the corporation, rather than the stockholders, "ha[d] standing to challenge the judgment against the corporation on appeal." 587 S.E.2d at 553.

11

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a "district court may deny leave to amend for reasons 'such as . . . undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment[.]'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

To date, Dr. Watkins has not filed a motion seeking leave to amend. To allow the Court to determine whether granting leave to file an Amended Complaint would be appropriate, the Court will permit Dr. Watkins to file a motion seeking leave to file an Amended Complaint.

### V. Conclusion

For the reasons articulated above, the Court will grant the Motion without prejudice. (ECF No. 3.)

An appropriate Order shall issue.

Date: 5/14/25
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge