IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HAROLD L. WATKINS,

        Plaintiff,

    v.                               Civil Action No. 3:24cv856

M2 BEHAVIORAL HEALTH OF
VIRGINIA, LLC, *et. al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Harold L. Watkins' ("Dr. Watkins") Motion for Leave to File an Amended Complaint (the "Motion").[1] (ECF No. 15.) Dr. Watkins attached a copy of his proposed Amended Complaint to the Motion. (ECF No. 15-1.) Defendants M2 Behavioral Health of Virginia, LLC ("M2"), Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray (collectively, "Defendants") responded in opposition to the Motion, (ECF No. 20), and Dr. Watkins replied, (ECF No. 21).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will deny Dr. Watkins' Motion with prejudice as to his constructive fraud claim and without prejudice as to his veil-piercing claim. (ECF No. 15.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

### A.    Factual Background[2]

Dr. Watkins "brings this action against [Defendants] to recover contractually agreed upon payments and benefits that were wrongfully withheld from" him.  (ECF No. 15-1 ¶ 1.)  Dr. Watkins' proposed Amended Complaint contains one Count of Breach of Contract and a second Count of Constructive Fraud.  (ECF No. 15-1 ¶¶ 63–76.)  Dr. Watkins seeks to pierce Defendant M2's corporate veil and hold Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray (the "Individual Defendants") individually liable for breach of contract.  The proposed Amended Complaint contains facts in support of his veil-piercing theory.  (ECF No. 15-1 ¶¶ 38–62.)  The Court therefore summarizes the allegations in the proposed Amended Complaint as they relate to each Count and as they relate to Dr. Watkins' veil-piercing theory.

### 1.    Allegations Relevant to Dr. Watkins' Agreement with Defendants

HarryCo., LLC ("HarryCo") is a mental health services provider in Richmond, Virginia. (ECF No. 15-1 ¶ 35.)  Dr. Watkins, the former owner of HarryCo, is a resident of Richmond, Virginia.  (ECF No. 15-1 ¶ 6.)  Defendant M2 "is a corporation headquartered in Chicago,

---

[2] As discussed below, Defendants assert that the Court should deny Dr. Watkins' Motion under Federal Rule of Civil Procedure 15(a)(2) because amendment of his complaint would be futile.  In determining whether amendment of the complaint would be futile, the Court must determine if the "proposed amendment . . . is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3 213, 228 (4th Cir. 2019) (quotation omitted).

Applying the motion to dismiss standard to the proposed Amended Complaint, the Court will assume the well-pleaded factual allegations in the proposed Amended Complaint to be true and will view them in the light most favorable to Dr. Watkins. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Illinois, but is also registered as a Virginia Corporation in Henrico, Virginia." (ECF No. 15-1 ¶ 7.) The Individual Defendants are "officer[s] and owner[s] of M2." (ECF No. 15-1 ¶¶ 8–11.)

In February 2019, Dr. Watkins, then-owner of HarryCo, "engaged the services of *Benchmark International*, an international marketing company, to establish a sale profile for HarryCo." (ECF No. 15-1 ¶ 20.) On November 3, 2020, Defendant Mark Weldler, "an officer and owner of M2," sent a letter of intent "to *Benchmark International*, to purchase HarryCo." (ECF No. 15-1 ¶¶ 8, 21.)

On April 22, 2021, Dr. Watkins and M2 executed a Securities Purchase Agreement (the "Purchase Agreement") and a Promissory Note to allow M2 to purchase HarryCo for $3,000,000. (ECF No. 15-1 ¶ 22.) M2 agreed to pay $1,200,000 upon closing. (ECF No. 15-1 ¶ 24; ECF No. 1-2, at 12, § 1(b)(i).)[3] M2 agreed to pay the remaining $1,800,000 "in accordance with the terms of" the Promissory Note, which was subject to "an adjustment . . . based upon the working capital of [HarryCo] at [c]losing." (ECF No. 15-1 ¶ 24; ECF No. 1-2, at 12 §1(b)(ii)–

---

[3] In his proposed Amended Complaint, Dr. Watkins incorporates by reference the copies of the Purchase Agreement and Promissory Note attached to his original complaint. (ECF No. 1-2, at 11–44.) The Court admonishes Dr. Watkins that a plaintiff seeking leave to amend must file a single, proposed amended pleading containing all relevant exhibits, even if those exhibits are identical to those attached to an original complaint. *See Dobson v. Clarke*, No. 3:22-cv-132 (JAG), 2024 WL 1468339, at *6 (E.D. Va. Apr. 4, 2024) ("[L]itigants may not spackle new allegations or defendants onto the original complaint.") (citing *Williams v. Wilkerson*, 90 F.R.D. 168, 169–70 (E.D. Va. 1981)).

However, because neither party contests Dr. Watkins' incorporation of the contractual provisions by reference, the Court will consider those provisions as if they were attached to the proposed Amended Complaint in order to ensure "the just, speedy, and inexpensive determination" of the present action. Fed. R. Civ. P. 1.

(iii); *see also* ECF No. 1-2, at 41.) Both the Purchase Agreement and the Promissory Note contain Virginia choice-of-law clauses. (ECF No. 1-2, at 37 § 20; ECF No. 1-2, at 43.)

M2 asked Dr. Watkins "to remain involved in HarryCo as a consultant" and to manage HarryCo's daily operations. (ECF No. 15-1 ¶ 25.) On April 29, 2021, "[t]he terms of this . . . arrangement were memorialized in an 18-month Employment Agreement." (ECF No. 15-1 ¶ 25.) Pursuant to the Employment Agreement, Dr. Watkins would be "paid an annual base salary of $184,000.00." (ECF No. 15-1 ¶ 26.)

On September 29, 2022, Dr. Watkins "gave written notice of his intention to terminate his employment with M2 . . . effective October 29, 2022." (ECF No. 15-1 ¶ 27.) However, Dr. Watkins "remained on staff for an additional four months without a new employment agreement based on promises and representations of" Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray. (ECF No. 15-1 ¶ 28.)

Dr. Watkins "has only received eight [] quarterly payments on the outstanding promissory note." (ECF No. 15-1 ¶ 34.) To date, Dr. Watkins is owed $1,750,000.00, "plus amortized interest under the terms of the original promissory note." (ECF No. 15-1 ¶ 29.)

### 2.     Allegations Relevant to Dr. Watkins' Veil-Piercing Theory

On April 23, 2021, Dr. Watkins "participated in a final site visit" of HarryCo with Defendants Moshe Lowy and Mark Weldler. Defendant Barry Ray "participated in this meeting via telephone." (ECF No. 15-1 ¶ 38.) During this visit, Defendants Lowy and Weldler "for the first time informed Dr. Watkins that [Defendant] Barry Ray, through his role as Owner and Manager of KL'OLAM Chasado, LLC of Florida (incorporated on April 20, 2021, just two days prior to the site visit of April 23) had a 30% interest in the purchase of" HarryCo. (ECF No. 15-

4

1 ¶ 39.) Defendants Lowy and Weldler are also "members of KL'OLAM Chasado, LLC." (ECF No. 15-1 ¶ 40.)

On the same day, "Defendants Lowy and Weldler provided Dr. Watkins with a copy of a Promissory Note made payable personally to Defendant Joshua Ray for $600,000.00 as an investment loan to M2 Behavioral Health of Virginia from Ray Family Enterprises II. Defendant Barry Ray signed the Promissory Note as authorized representative for Ray Family Enterprises." (ECF No. 15-1 ¶ 41; ECF No. 15-4.)

The proposed Amended Complaint alleges that "Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray are the alter-egos of [Defendant] M2 Behavioral Health, KL'OLAM Chasado, LLC of Florida, and Ray Family Enterprises, making individual personal loans to each other through their business entities to secure purchases of other companies. They are all one in the same." (ECF No. 15-1 ¶ 42.)

Defendants "Weldler and Lowy were both parties to the Purchase Agreement subject to these claims." (ECF No. 15-1 ¶ 43.)[4]

### 3.    Allegations Relevant to Dr. Watkins' Constructive Fraud Claim

The proposed Amended Complaint alleges that Defendants "had no intention of paying Dr. Watkins the remaining monies owed under the promissory note. This belief is based on the fact that [the Individual Defendants] began to manufacture issues with Dr. Watkins, placing

---

[4] To support this proposition, the proposed Amended Complaint cites the Purchase Agreement attached to Dr. Watkins' original complaint. (ECF No. 1-2, at 11–40.) Defendant M2 is listed on the Purchase Agreement as "Purchaser." (ECF No. 1-2, at 38.) Defendants Weldler and Lowy each signed the Purchase Agreement as a "Principal" of M2. (ECF No. 1-2, at 38.)

stipulations on the payment of the remaining money owed under the original promissory note . . . which did not exist upon the sale of the business." (ECF No. 15-1 ¶¶ 44–45.)

The proposed Amended Complaint recounts several allegations of issues "manufactured" by the Individual Defendants.  "[O]n or about December 9, 2021," Defendants Weldler and Lowy "learned of Employee Retention Credits for which HarryCo[] had applied prior to the sale of [HarryCo] to [Defendant] M2.  Those funds were received and applied to HarryCo. LLC's payroll as directed by the federal government for COVID relief." (ECF No. 15-1 ¶ 46.) Defendants "Weldler and Lowy told Dr. Watkins that the [credits] belonged to them and accused Dr. Watkins of misappropriating those funds." (ECF No. 15-1 ¶ 47.)  Dr. Watkins "discussed resolutions to th[is] issue" with the Individual Defendants for the next six months.  (ECF No. 15-1 ¶ 48.)

"On November 1, 2022, Dr. Watkins traveled to Chicago, Illinois to meet with [Defendants] Moshe Lowy, Mark Weldler and Barry Ray to discuss the [credits], as well as Dr. Watkins' employment agreement.  Dr. Watkins again expressed his desire to set a separation date from the organization as a follow-up to his formal letter of September 29, 2022.  The matter was tabled at the request of [Defendants] Barry Ray, Lowy and Weldler until another follow-up meeting could be held.  (ECF No. 15-1 ¶ 50.)

"On January 22 and 23, 2023, Dr. Watkins traveled to Washington, D.C. to meet with [Defendants] Lowy, Weldler and Barry Ray" where the parties resolved the credits issue." (ECF No. 15-1 ¶ 51.)  "On February 1, 2023," Dr. Watkins signed "an amendment to the promissory note to reflect" the parties' decision to "split[] the difference of the [ERC] funds in dispute and decreas[e] the outstanding promissory note due to Dr. Watkins by One Hundred Fifty Thousand Dollars." (ECF No. 15-1 ¶¶ 51–52.)  "[O]n March 27, 2023, Dr. Watkins met with [Defendant]

Barry Ray who advised that he had received the amended promissory note, but . . . he had not decided if he would honor the agreement. [Defendant] Barry Ray went on to assert that he would not honor the agreement unless Dr. Watkins agreed to extend and sign a new employment agreement." (ECF No. 15-1 ¶ 53.) Defendant Ray "was now using the [credits] issue . . . as leverage to secure an extended employment agreement with Dr. Watkins to continue to run and direct HarryCo[] for M2." (ECF No. 15-1 ¶ 54.) "[U]pset by the gamesmanship of [Defendant] Barry Ray and his partners, [Defendants] Weldler and Lowy, Dr. Watkins made March 31, 2023 his last day of employment for HarryCo[] and M2." (ECF No. 15-1 ¶ 55.)

The Individual Defendants also claimed that Dr. Watkins "failed to file appropriate documentation with the Virginia Department of Behavioral Health and Developmental Services (DBHDS) to reflect the change in ownership, with M2 having 100% equity interest in HarryCo." (ECF No. 15-1 ¶ 56.) According to the proposed Amended Complaint, the Individual Defendants did not actually want any such documentation filed with DBHDS: "[Defendants] Lowy and Weldler did not want to diminish the services or programs that were in existence at HarryCo[] at the time of their purchase" because "the notion of rapidly expanding throughout the state became a primary focus of M2." (ECF No. 15-1 ¶¶ 57–58.) And M2 would not be able to "aggressively expand . . . without the licensing credentials afforded by Dr. Watkins." (ECF No. 15-1 ¶ 59.) "As such, the only way to accomplish M2's goals was to add Weldler and Lowy to the DBHDS licensing agreement as part owners, with Dr. Watkins maintaining majority control of HarryCo[] to satisfy DBHDS licensing requirements." (ECF No. 15-1 ¶ 60.) Defendants "Weldler and Lowy were fully aware of this arrangement with DBHDS and knew that Dr. Watkins had no intention of relinquishing 100% control of HarryCo., until he was paid in full according to the terms of the Promissory Note." (ECF No. 15-1 ¶ 61.) "None of the

7

aforementioned matters became an issue until Dr. Watkins expressed his intention to resign." (ECF No. 15-1 ¶ 62.)

### B.    Procedural Background

On December 2, 2024, Defendants properly removed this case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1, at 5.) Dr. Watkins' original complaint contained one count of Breach of Contract against all Defendants. On December 9, 2024, Defendant M2 filed an answer to Dr. Watkins' original complaint and a counterclaim against him. (ECF No. 2.) On the same date, Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray filed a timely Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3.) In its opinion granting the Motion to Dismiss, the Court explained that Dr. Watkins' original complaint failed to state a claim for breach of contract under Virginia law because none of the Individual Defendants were parties to the contract between HarryCo and M2. (ECF No. 13, at 6–9.) The Court further explained that the original complaint was devoid of any facts suggesting that Dr. Watkins could pierce M2's corporate veil and thereby pursue his breach-of-contract claim against the Individual Defendants who were not formal signatories to the contract. (ECF No. 13, at 6–9.)

The Court permitted Dr. Watkins to file a motion for leave to file an amended complaint. (ECF No. 13, at 9–12.) On May 28, 2025, Dr. Watkins filed the instant Motion seeking leave to amend his complaint and attached a proposed Amended Complaint. (ECF Nos. 15, 15-1.) The proposed Amended Complaint retains Dr. Watkins' original Count of Breach of Contract against all Defendants, (ECF No. 15-1 ¶¶ 63–69), and adds a second Count of Constructive Fraud against all Defendants. (ECF No. 15-1 ¶¶ 70–76.)

8

## II.  Standard of Review

### A.      Motions to Amend Pleadings Under Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within twenty-one days after service or, if the pleading requires a response, within twenty-one days after service of the response or service of a motion under Federal Rule of Civil Procedure 12.  Fed. R. Civ. P. 15(a)(1).  Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "[L]eave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, unless 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'"  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (first quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962), then quoting *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006)); *see also* Fed. R. Civ. P. 15(a)(2) (directing that leave to amend should be "freely given").

"Traditionally, [the Fourth Circuit has] held that a proposed amendment was 'futile' if it was 'clearly insufficient or frivolous on its face.'  But in recent years, [the Fourth Circuit has] made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."  *In re Triangle*, 988 F.3d at 750 (citations omitted).  A proposed amendment is therefore futile when it is "clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss."  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### B.      Motions to Dismiss Under Federal Rule of Civil Procedure 12

In addressing whether amendment of a complaint would be futile, the Court must therefore apply the motion-to-dismiss standard under Federal Rule of Civil Procedure 12(b)(6).

9

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded allegations and view[s] the [pleading] in the light most favorable to [the claimant]." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All reasonable inferences that can be drawn from the pleading are drawn in the claimant's favor. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

Federal Rule of Civil Procedure 8 only requires that a pleading set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## C.    Pleading Fraud Under Federal Rule of Civil Procedure 9

Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading standard for fraud claims." *Carlucci v. Han*, 886 F. Supp. 2d 497, 509 (E.D. Va. 2012). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Carlucci*, 886 F. Supp. 2d at 509.

10

### III. Analysis

Dr. Watkins seeks leave to amend his complaint to add in allegations establishing that piercing M2's corporate veil is appropriate and that Defendants have engaged in constructive fraud. (ECF No. 21, at 3–5.) Defendants respond that amendment of the complaint to include these allegations would be futile because neither Dr. Watkins' veil-piercing theory nor his constructive fraud claim would survive a motion to dismiss. (ECF No. 20, at 3–9.) Dr. Watkins replies that consideration of his veil-piercing theory at this stage of the litigation is premature and that, even if the Court were to apply the motion-to-dismiss standard to his claims, both new claims would survive a motion to dismiss. (ECF No. 21, at 3–5.)

The Court will deny Dr. Watkins' Motion. For the reasons articulated below, amendment of Dr. Watkins' complaint to include the veil-piercing allegations or the constructive fraud claim would be futile because the proposed Amended Complaint would not survive a motion to dismiss. The Court will deny the Motion with respect to Dr. Watkins' constructive fraud claim with prejudice. But because Dr. Watkins may raise his veil-piercing theory at a later stage of the litigation, the court will deny the Motion with respect to the veil-piercing claim without prejudice.

**A.      Dr. Watkins' Proposed Amended Complaint Would be Futile Because the Proposed Amended Complaint Fails to State a Claim for Piercing the Corporate Veil**

Dr. Watkin argues that his proposed Amended Complaint contains sufficient allegations to support piercing M2's corporate veil. (ECF No. 21, at 3–5.) Defendants respond that the proposed Amended Complaint lacks any of the allegations ordinarily required to establish a veil-piercing claim. (ECF No. 20, at 3–8.)

11

The Court agrees with Defendants. The proposed Amended Complaint fails to state a claim for veil piercing. But the Court also acknowledges that nothing in its opinion prevents Dr. Watkins from raising a veil-piercing theory at a later state of the litigation even though the Court determines now that amendment of the original complaint would be futile.

### 1.    Legal Standard:  Piercing the Corporate Veil

Under Virginia law, "[t]he proposition is elementary that a corporation is a legal entity separate and distinct from the stockholders or members who compose it." *Dana v. 313 Freemason*, 266 Va. 491, 499 (2003) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987)). "Piercing the corporate veil disregards the corporate fiction and allows shareholders to be held personally liable for the acts of the corporation." *Mid Atl. Eng'g Tech. Servs. v. Miller Hardman Designs, LLC*, No. CL09-2268, 2013 WL 8019593, at *1 (Va. Cir. Ct. Mar. 25, 2013). Piercing the corporate veil is thus an "equitable *remedy*." *Id.* (emphasis added); *see also Job v. Simply Wireless, Inc.*, 160 F. Supp. 3d 891, 901 n.11 (E.D. Va. 2015) ("Although plaintiffs allege piercing the corporate veil as a cause of action, as a doctrinal matter it is actually a remedy.") (citing *C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 12 (2003)).

The Supreme Court of Virginia "has been very reluctant to permit veil piercing. [It has] consistently held . . . that only 'an extraordinary exception' justifies disregarding the corporate entity and piercing the veil." *C.F. Trust*, 266 Va. at 10 (citation omitted). "[N]o single rule or criterion . . . can be applied to determine whether piercing the corporate veil is justified. Each case must be considered in the context of its own specific circumstances." *Dana*, 266 Va. at 500 (quotation and citation omitted). Even applying that fact-specific inquiry, Virginia courts disfavor veil piercing:

> [D]isregarding the corporate entity is usually warranted only under the extraordinary circumstances where the shareholder[s] sought to be held personally

12

liable [have] controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual[s] no longer exist and to adhere to that separateness would work an injustice.

*Dana*, 266 Va. at 500 (citations omitted).

If a plaintiff seeks to pierce the corporate veil, that plaintiff ordinarily receives relief only after obtaining a judgment against a corporation: "Although under appropriate circumstances, the injured party may seek to pierce the veil of the corporation to impose liability against its stockholders, such action is *depend[e]nt upon first obtaining a judgment against the corporation.*" *Dana*, 266 Va. at 499 (emphasis added).

### 2. The Court Will Consider Dr. Watkins' Veil-Piercing Claim at this Stage of the Litigation

In their response to the Motion, Defendants argue that amending Dr. Watkins' complaint to attempt to pierce M2's corporate veil is futile because Dr. Watkins' veil-piercing claim fails to satisfy the motion-to-dismiss standard of Rule 12(b)(6). (ECF No. 20, at 3–8.) In reply, Dr. Watkins asserts that consideration of a veil-piercing theory at the motion-to-dismiss stage, and therefore at the motion-to-amend stage, is premature; according to Dr. Watkins, veil piercing is merely a remedy unsuited for dismissal under Rule 12(b)(6). (ECF No. 21, at 3.)

In its opinion granting the Individual Defendants' Motion to Dismiss, the Court explained that in *Polito's Christmas Wholesale LLC v. Blue Mountain Christmas Tree Farm*, the United States District Court for the Western District of Virginia refused to rule on a defendant's motion to dismiss a plaintiff's veil-piercing claim because veil piercing is merely a remedy: "[P]iercing the corporate veil is a remedy, not a cause of action. A Rule 12(b)(6) motion may only be used to dismiss claims, not remedies." No. 1:23-cv-27, 2024 WL 4202729, at *2 (W.D. Va. Sept. 16, 2024) (citation omitted). But the Court refused to rule on this issue because neither party

13

provided any argument as to whether consideration of a veil-piercing theory is appropriate at the motion-to-dismiss stage. (ECF No. 13, at 11.) The parties have now addressed the issue fully, and the Court will consider Dr. Watkins' veil-piercing theory for two reasons.

First, Virginia state courts and federal courts applying Virginia law have frequently addressed veil-piercing claims at the leave-to-amend stage and the motion-to-dismiss stage. *See, e.g., Van Buren v. Poston*, No. CL11-0027, 2017 WL 10991238, at *5 (Va. Cir. Ct. Nov. 30, 2017) ("[W]hether a complaint sufficiently alleges a claim to pierce a limited liability entity's corporate veil to reach an individual shareholder or member is properly considered on demurrer.")[5]; *Marcus v. Dennis*, No. 1:21-cv-01085 (RDA), 2022 WL 1527524, at *10–11 (E.D. Va. May 13, 2022) (dismissing veil-piercing claim); *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 426–27 (E.D. Va. 2011) (same).[6]

---

[5] In some cases, Virginia courts have addressed a veil-piercing claim at the motion-to-dismiss stage only *after* a plaintiff seeking veil piercing has already obtained an underlying judgment against the defendant-corporation. *See Vogen Funding, LP v. Wener*, No. CL09–167, 2012 WL 7964274, at *4 (Va. Cir. Ct. Apr. 16, 2012) ("[I]n Virginia, an action to pierce the veil of the corporation to impose liability against its shareholders . . . is dependent upon first obtaining a judgment against the corporation. . . . Vogen has not stated in its pleadings that it has obtained a judgment against New River."); *A.G. Dillard, Inc. v. Stonehaus Constr., LLC*, No. 151182, 2016 WL 3213630, at *1 (Va. June 2, 2016) (considering veil-piercing claim where plaintiff "sought to collect a judgment"). But because still other Virginia courts have considered a veil-piercing claim at the motion-to-dismiss stage, the Court will do the same here.

Moreover, nothing in the Court's opinion prevents Dr. Watkins from raising a veil-piercing theory at a later stage of the litigation if he were to obtain a judgment against M2. *See Marcus v. Dennis*, No. 1:21-cv-01085 (RDA), 2022 WL 1527524, at *11 n.7 (E.D. Va. May 13, 2022) (dismissing veil-piercing claim but noting that, "[b]ecause piercing the corporate veil may occur only after a judgment has been entered against the LLC, [p]laintiffs may still move to pierce the veil upon an adequate showing following discovery").

[6] *Polito's* admonition that a Court should avoid ruling on a veil-piercing claim at the motion-to-dismiss stage does not alter the Court's view of these cases. The *Polito's* court cited *Sport of Bus., LLC v. Sarah Beth Yoga, LLC* for the proposition that courts should avoid ruling on veil-piercing claims at the motion-to-dismiss stage. 2024 WL 4202729, at *2 (citing No. 7:21-cv-00142, 2022 WL 848066, at *5 (W.D. Va. Mar. 21, 2022)). But *Sarah Beth Yoga*, in

14

Second, under Virginia law, a defendant cannot be held liable for breaching a contract to which they are not a party. *See Scheurer-Henry v. Envoy of Richmond, LLC*, No. 3:21-cv-376 (JAG), 2021 WL 5755335, at *7 (E.D. Va. Dec. 3, 2021). If individual defendants were unable to contest the propriety of a veil-piercing claim at the motion-to-dismiss stage, then they would be forced to continue litigating a suit in which they had not yet been linked to the underlying contract. "[A]llowing the breach of contract claims and *ancillary alter ego claims* to proceed in one action . . . promote[s] efficient resolution of" these issues. *DNCSI Sols. LLC v. Landmore, Inc.*, No. 5:19-cv-70, 2020 WL 5603757, at *4 (W.D. Va. Sept. 18, 2020) (emphasis added), *report and recommendation adopted*, 2020 WL 6252346 (W.D. Va. Oct. 23, 2020).

Accordingly, the Court will address the futility of the proposed Amended Complaint's veil-piercing claim at this stage of the litigation by applying Rule 12(b)(6)'s motion-to-dismiss standard.

### 3.    Dr. Watkins' Proposed Amended Complaint Fails to State a Claim for Piercing the Corporate Veil

Applying Rule 12(b)(6)'s standard to the proposed Amended Complaint, Dr. Watkins fails to state a claim to pierce M2's corporate veil.

In assessing whether veil piercing is appropriate, Virginia courts consider whether the individuals allegedly behind the corporate veil have "controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Dana*, 266 Va. at 500 (citations omitted). Specifically, Virginia courts consider

---

turn, cited *Job v. Simply Wireless, Inc.* for the same proposition. 2022 WL 848066, at *5 (citing 160 F. Supp. 3d 891, 901 n.11 (E.D. Va. 2015)). And in *Job*, the United States District Court for the Eastern District of Virginia *did* rule on a veil-piercing claim at the motion-to-dismiss stage even where it noted that veil-piercing is properly considered a remedy rather than a cause of action. 160 F. Supp. 3d at 901–902 & n.11. Thus, even the caselaw undergirding *Polito's* suggests that the Court may rule on the futility of Dr. Watkins' veil-piercing claim now.

factors such as "the initial capitalization of a corporation, the observation of corporate formalities, the non-payment of dividends, the insolvency of the debtor corporation at the time, the siphoning of funds of the corporation by dominant shareholders, the non-function of other officers or directors, and whether the corporate structure is a sham." *Mid Atl. Eng'g*, 2013 WL 8019593, at *1 (citation omitted).

The proposed Amended Complaint contains no such allegations. Instead, Dr. Watkins alleges that Defendant Barry Ray is the owner and manager of KL'OLAM Chasado, LLC, which "had a 30% interest in the purchase of" HarryCo," (ECF No. 15-1 ¶ 39); that Defendants Lowy and Weldler are also "members of KL'OLAM Chasado, LLC," (ECF No. 15-1 ¶ 40); and that "Defendants Lowy and Weldler provided Dr. Watkins with a copy of a Promissory Note made payable personally to Defendant Joshua Ray for $600,000.00 as an investment loan to M2 Behavioral Health of Virginia from Ray Family Enterprises II," (ECF No. 15-1 ¶ 41; ECF No. 15-4). Finally, Dr. Watkins alleges that "Defendants Mark Weldler, Moshe Lowy, Barry Ray, and Joshua Ray are the alter-egos of [Defendant] M2 Behavioral Health, KL'OLAM Chasado, LLC of Florida, and Ray Family Enterprises, making individual personal loans to each other through their business entities to secure purchases of other companies. They are all one in the same." (ECF No. 15-1 ¶ 42.)

These allegations fail to state a claim to pierce the corporate veil. Courts addressing veil-piercing claims require plaintiffs to make a much more substantial showing before obtaining the "extraordinary" remedy of veil piercing. *See, e.g., Dana*, 266 Va. at 500–502 (finding "extraordinary" circumstances permitted veil piercing where corporation was "never capitalized" and individual defendants exercised "absolute control" of corporation); *Cheatle,* 234 Va. 207 at 213 (finding veil piercing inappropriate because "there was no showing that the [individual

16

defendants] commingled corporate and personal assets" and that "[c]orporate formalities were followed"). The proposed Amended Complaint lacks a similarly substantial showing that would otherwise support a veil-piercing theory.

Dr. Watkins has therefore failed to demonstrate a "unity of interest" between the Individual Defendants and Defendant M2, such that the proposed Amended Complaint fails to state a claim to pierce M2's corporate veil. *Dana*, 266 Va. at 500. As a result, even applying the liberal pleading standard of Rule 15(a)(2), amending Dr. Watkins' complaint would be futile because his veil-piercing claim is "clearly insufficient" on its face and would not survive a motion to dismiss. *Save Our Sound*, 914 F.3d at 228.

As earlier stated, however, Dr. Watkins may raise a veil-piercing theory at a later stage of the litigation if he obtains a judgment against M2. *See Marcus*, 2022 WL 1527524, at *11 n.7 (dismissing veil-piercing claim but noting that, "[b]ecause piercing the corporate veil may occur only after a judgment has been entered against the LLC, [p]laintiffs may still move to pierce the veil upon an adequate showing following discovery").

B.    **Dr. Watkins' Proposed Amended Complaint Would be Futile Because the Proposed Amended Complaint Fails to State a Claim for Constructive Fraud**

1.    **Legal Standard:  Constructive Fraud**

For allegations of fraud or mistake, a plaintiff bears the heightened burden to "state with particularly the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023).

A constructive fraud claim requires "clear and convincing evidence" that (1) a false representation of a material fact; (2) was made innocently or negligently; and (3) the injured party was damaged as a result of his or her reliance upon the misrepresentation. *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017) (quoting *Mortarino v. Consultant Eng'g Servs., Inc.*,

17

251 Va. 289, 295 (1996)). "[A] plaintiff must also show by 'clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation.'" *Id.* (quoting *Mortarino*, 251 Va. at 295).

Like claims of actual fraud, a plaintiff alleging constructive fraud must further show that the alleged misrepresentation "relate[s] to a present or a pre-existing fact." *Soble v. Herman*, 175 Va. 489, 500 (1940); *see Poth v. Russey*, 99 F. App'x 446, 452–53 (4th Cir. 2004) (applying this "general rule" of fraud specifically to constructive fraud). Fraud claims cannot be based on statements about future events or unfulfilled promises. *See Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) ("A promise to perform an act in the future is not, in a legal sense, a representation as that term is used in the fraud context" because otherwise, "almost every breach of contract could be claimed to be a fraud") (citation omitted); *see also Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 681 (E.D. Va. 2012); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559 (1998) (where "allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties," they are "not actionable in tort")

### 2. Dr. Watkins' Proposed Amended Complaint Fails to State a Claim for Constructive Fraud

Dr. Watkins' proposed Amended Complaint fails to state a claim for constructive fraud. Relevant to his constructive fraud claim, the proposed Amended Complaint alleges that Defendants Weldler and Lowy asserted that Employee Retention Credits "for which HarryCo. LLC had applied prior to the sale of the business" belonged to them. (ECF No. 15-1 ¶¶ 46–47.) The parties ultimately resolved this dispute, but Defendant "Barry Ray went on to assert that he

18

would not honor the agreement [regarding these credits] unless Dr. Watkins agreed to extend and sign a new employment agreement." (ECF No. 15-1 ¶ 53.)[7]

The proposed Amended Complaint further alleges that the Individual Defendants "claimed that Dr. Watkins failed to file appropriate documentation with the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") to reflect the change in ownership, with M2 having 100% equity interest in HarryCo." (ECF No. 15-1 ¶ 56.) Dr. Watkins alleges that, in reality, the Individual Defendants did not have an interest in seeing their ownership of HarryCo properly reflected in documents before DBHDS. The Individual Defendants sought to "rapidly expand[] throughout the state," which they could not have done unless "Dr. Watkins maintain[ed] majority control of HarryCo[] to satisfy DBHDS licensing requirements." (ECF No. 15-1 ¶ 60.)

Even if the Court were to assume that the representations above constitute *false* representations, and even if the Court assumes that Dr. Watkins relied upon these representations,[8] amending his complaint would be futile because the proposed Amended

---

[7] To the extent Dr. Watkins asserts that Defendant Barry Ray's alleged ultimatum regarding the credits agreement is a false representation, Virginia law forecloses this argument. "[F]raud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events." *Supervalu, Inc. v. Johnson*, 276 Va. 356, 267 (2008).

[8] In order to state a claim of constructive fraud, a plaintiff must show not only that they relied upon a defendant's false representations, but also that they did so *reasonably*. *Datastaff Tech. Grp., Inc. v. Centex Const. Co., Inc.*, 528 F. Supp. 2d 587, 597 (E.D. Va. 2007) ("Reliance is not reasonable if the party asserting constructive fraud makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry.") (quotation omitted). The proposed Amended Complaint contains no allegations that Dr. Watkins' reliance on the Individual Defendants' representations was reasonable. In fact, the proposed Amended Complaint suggests that even where Dr. Watkins relied on their representations, he also *contested* those representations. (ECF No. 15-1 ¶ 48 (noting that "[o]ver the course of the next six (6) months, *despite proof that the funds were applied for prior to the sale of the business*," Dr. Watkins negotiated with the Individual Defendants over their entitlement to certain credits).)

19

Complaint fails to tie Dr. Watkins' reliance on these representations to his alleged damages. According to the proposed Amended Complaint, Dr. Watkins relied on the Individual Defendants' representations to his detriment in two ways:  (1) their representations "induce[d] Dr. Watkins to remain an employee of M2" when he did not wish to, (ECF No. 15-1 ¶ 72); and (2) "Dr. Watkins reasonably believed that he would be compensated for the sale of HarryCo[] according to the terms of promissory note" and the Individual Defendants' representations above "induced and affirmed such belief," (ECF No. 15-1 ¶ 74).  The only relief Dr. Watkins seeks for this detrimental reliance is the remaining amount owed to him under the original Purchase Agreement.  (ECF No. 15-1, at 12.)

"Under Virginia law, a plaintiff alleging fraud 'must prove damages which are *caused by his detrimental reliance on a defendant's material misrepresentation.*'" *Hazaimeh v. U.S. Bank Nat'l Ass'n*, 94 F. Supp. 3d 741, 750 (E.D. Va. 2015) (quoting *Murray v. Hadid*, 238 Va. 722, 730 (1989)) (emphasis added).  If Dr. Watkins' reliance on the Individual Defendants' representations took the form of remaining an employee of M2 for longer than he liked, he alleges no specific damages resulting from his remaining an employee of M2.  To the contrary, the only damages he alleges are those resulting from Defendants' alleged failure to perform their obligations under the Purchase Agreement.  Even if Defendants had not engaged in the alleged constructive fraud, Dr. Watkins' damages would remain; their alleged failure to perform under the Purchase Agreement would be no different.  *See Cmty. Bank v. Wright*, 221 Va. 172, 175 (1980) ("[T]here is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed.")

---

Moreover, and as Defendants argue, Dr. Watkins' reliance on the Individual Defendants' representations is unclear; Dr. Watkins left his employment with HarryCo after becoming "upset by the gamesmanship" of the Individual Defendants.  (ECF No. 15-1 ¶ 55.)

20

The same is true if instead the Court assumes that Dr. Watkins' reliance on the Individual Defendants' representations took the form of the Individual Defendants "induc[ing] and affirm[ing]" Dr. Watkins' "reasonabl[e] belie[f] that he would be compensated for the sale of HarryCo[] according to the terms of promissory note." (ECF No. 15-1 ¶ 74). At the time when the Individual Defendants made their allegedly false representations, Dr. Watkins had already agreed to sell HarryCo to Defendant M2. (ECF No. 15-1 ¶¶ 22, 46 (noting that the parties signed the Purchase agreement on April 22, 2021, while the Individual Defendants' representations occurred on and after December 9, 2021).) The Individual Defendants' subsequent representations "affirming" Dr. Watkins' belief that he would be paid according to their agreement did not result in any *detrimental* reliance; even had the Individual Defendants not made their representations, Dr. Watkins would still face the same injury, namely the Individual Defendants' alleged failure to perform under the Purchase Agreement

Because Dr. Watkins "cannot plausibly allege that the injury [he] suffered resulted from [his] reliance on [the Individual Defendants'] representation[s]," he cannot state a claim for constructive fraud. *Cagle v. CitiMortgage, Inc.*, No. 3:13-cv-807 (MHL), 2015 WL 2063990, at *5 (E.D. Va. May 1, 2015). Accordingly, amending Dr. Watkins' complaint would be futile because his constructive fraud claim is "clearly insufficient" and would not survive a motion to dismiss. *Save Our Sound*, 914 F.3d at 228.

21

## IV.  Conclusion

Amendment of Dr. Watkins' complaint would be futile because the proposed Amended Complaint fails to state a claim for veil piercing or constructive fraud.  As a result, the Court will deny the Motion with prejudice with respect to Dr. Watkins' constructive fraud claim and deny the Motion without prejudice with respect to Dr. Watkins' veil piercing claim.

It is SO ORDERED.

Date: 3/20/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

22